Good morning, Your Honors. May it please the Court. My name is Benny DeMudia, Interim Appellant, Cathay Pacific Airways Limited. And if the Court's amenable, I'd like to reserve about five minutes of my time for rebuttal at the end. All right. Watch your clock, and we'll do our best to give you a signal. It'll start when you get going. Can you see it? Thank you. In its appeal, Cathay Pacific asks that this Court reverse the District Court's order denying Cathay Pacific's motion to compel arbitration and enter a new order directing the parties to attend arbitration. As an initial matter, there are a number of issues that are undisputed, the central ones being that plaintiffs purchased the at-issue tickets from a third-party travel agent, ASAP Tickets, and that in doing so, they agreed to ASAP Tickets' terms and conditions, including the arbitration provision included therein. Plaintiffs now claim that when a certain segment of their flight for their travel was canceled, they requested from ASAP Tickets, they requested a refund from ASAP Tickets, and were told by ASAP Tickets that they could only receive expiring flight vouchers. Well, but they also say that in some they make an argument that they requested from Cathay Pacific, and they did get this e-mail from Cathay Pacific that says, if you bought the ticket from us, do this, and we'll refund it. If you bought it from somebody else, go see them. Okay? Is there any kind of contract between CP and ASAP? There are guidelines that govern the conduct of third-party travel agents, but there's not a direct contract between ASAP Tickets and Cathay Pacific. Okay, so then when they buy the ticket, the ticket has various terms and conditions. Do any of those terms and conditions say, if you bought it from somebody else, these don't count? Not that they don't count, Your Honor. There is a provision in the terms and conditions that provides, I think it's 11.6, that states that Cathay Pacific has the right to issue refunds in the manner that the tickets were purchased and using the same currency. So if a plane is supposed to purchase their ticket through a third-party travel agent. The same currency sounds like, you know, whether it's in pesos. The same manner as well. So it's the same manner and currency. So if it's purchased with a third-party travel agent, a refund can be issued. It's headed, although it's headed currency. I've got it right here. The subject line is currency. We reserve the right to make a refund in the same manner and the same currency used to pay for the ticket. So I'm not sure quite what the same manner means. I'd submit that it means the same method that the payment was initially submitted. But that is the one that's headed currency, correct? If it's 11.6, Your Honor, then that's right. Go ahead. And I'll just add to address Your Honor's initial question. There is no representation that planes have ever made a request directly to Cafe Pacific to request a refund. All such requests were made to ASAP Tickets exclusively. So why did you send them the e-mail? When a flight is canceled, in order to Send that to all the passengers. Yes, Your Honor. Okay, so it's a blast e-mail. And you do that because you have some obligation to them because they're ticket holders? I would say that we want to advise the Cafe Pacific wants to advise the customers of how to go about getting their refund since they did purchase the ticket. As a practical matter, is there some kind of underlying fight here as to why you don't just pay them? I mean, you spent 10 times as much money litigating this. Is there something that you're trying to disclaim all connection with these kind of third-party people that you don't want to get hooked into? No, Your Honor. I think there's There is a practical limitation here. When it comes to issuing, when it comes to tickets that are issued by third parties, The reality is that oftentimes, and as is the case here, when a plaintiff purchases a ticket through a third-party travel agent, The payments information and contact details that are submitted to the airline are that of the travel agent. The airline does not have the credit card number. But you seem to have been able to send these folks an e-mail directly. Is that because when they check in, you get their manifest, you know, ID for traveling? Because you didn't have any trouble finding them, right? I believe that the e-mail was sent to ASAP Tickets. I'll look. Go ahead. Sorry. I have a question. You've talked about all the requests that the plaintiffs made were to ASAP and not to your client in terms of getting a refund. If the plaintiffs are suing under their contract between them and your client, you know, the ticket contract, what does it matter? I mean, I could see you in that litigation having a defense of you didn't trigger our duties under our contract by letting us know or demanding a refund or whatever. But in terms of what this case is about, like, why does it matter that they were communicating with ASAP as opposed to with your client? Because my understanding is they're suing under the terms of the agreement that they had by virtue of having a ticket with Cathay. Well, that's how it's played. But the reality is that the crux of plaintiff's claim is that the breach of the contract by Cathay Pacific is due to representation made by ASAP Tickets, that the only refunds that they can get would be a voucher or would be a voucher in lieu of a refund. That has never been Cathay Pacific's position. They've never received a communication from plaintiffs, nor have they received a communication from ASAP Tickets requesting a refund on behalf of plaintiffs. Well, except for that's why Judge Boggs was asking about the email, because that is a communication from your client to the plaintiffs that says, if you bought your ticket from a third party, go talk to them about this problem. Right? I'll need to check my notes here. But I believe that that communication was transmitted to ASAP Tickets, and if not, that it was – And bounced to them? I mean, because it's in their record. Sorry, yeah? Exhibit E to 32-2, that's why. You might be right. It looked like it was their exhibit. So if they had – I mean, I've got some questions for the other side, which is why didn't you – you know, when ASAP blew you off, why didn't you just pick up the phone and talk to Cathay Pacific? If they had, would you have paid them? The issue continues to be that if they can prove – and it's in our terms and conditions – if they can prove that it's them, and generally speaking, if you have a person that purchases a ticket, Cathay Pacific can always choose to refund the money to the person that purchased the ticket or the passenger, so long as they prove sufficiently that they are entitled to the refund. So the short answer is yes. So this whole fight is because they didn't pick up the phone and call you? I mean, it sounds to me like if I'd been in their position, I would have, but we'll ask what their position is. Could I ask you, while you're interrupted, could I ask you a question that came – it's a little troubling to me. Why is the motion to compel arbitration not an interim and run around 14 CFR? It just seems to me that the way it's already been paved. Your Honor, I think there's two points there. The court in Kapua addressed that point. First, it's that the plain reading of that section provides that an air carrier cannot – I don't want to misstate the language here on the record – is that an air carrier can't have a choice of forum into some other forum, which the arbitration would be. Your Honor? So it writes, it says, no carrier may impose any contract of carriage provision containing a choice of forum clause that attempts to preclude a passenger or a person who purchases a ticket for a transportation. I'll stop there. Firstly, Cathay Pacific's conditions of carriage do not contain a choice of forum clause. They do not. Beyond that – But you are trying to impose this obligation through ASAP's terms and conditions. No court has read that statute this way. Typically, it's – I guess I'll withdraw that. We are trying – Cathay Pacific is trying to avail itself of the right of that provision. They're trying to invoke the equitable estoppel by way of equitable estoppel. But this issue has already been decided. It's been addressed in the Kapua case. Based on the plain reading of the provision, it states that no carrier can impose a contract of provision in its conditions of carriage. Cathay Pacific does not have that. If you go into the intent of the provision, it states that it's supposed to apply to U.S. carriers for domestic flights. Cathay Pacific is a foreign carrier. Now, that's just sort of an interpretation or guidance from the FAA. It's not part of the regulation, right? It's the U.S. DOT that promulgated it. They are interpreting their own provision and stating that it's intended to be imposed on U.S. carriers for domestic flights. Cathay Pacific is a foreign carrier, and these are foreign flights. And I'll see the rest of my time for – That's helpful. Let me ask one other question, if I could. Is it your position that ASAP tickets and never requested a refund on behalf of the appellees and that, therefore, that there was no contact with your client? I'm not sure that's an understandable question, but it struck me that that might be your position, and I wanted to know if it is. Yes, Your Honor, that's correct. ASAP tickets has never contacted Cathay Pacific on behalf of the Herreras to request a refund, nor have the Herreras contacted Cathay Pacific to request a refund. Okay. Thank you very much for your help. Thank you, Your Honor. Thank you. Good morning. May it please the Court, my name is Matthew Robb. On behalf of plaintiffs, appellees, the Herreras who purchased tickets from the Cathay Pacific airline through a third-party booking agency, ASAP Tickets. The issue before the Court, which I think has been sort of missed here, is whether Cathay Pacific, as a non-signatory and non-participant to an arbitration agreement that was separately entered into between the Herreras and ASAP Tickets, can or should or must be allowed to equitably enter into that agreement in order to impose arbitration and thereby take the Herreras' ability of the federal forum away from them with respect to the breach of contract claims against Cathay. I know that's a mouthful, but I think that we've sort of strayed away in our analysis from the key points here. Well, I think we're trying to figure out what's actually going on here. Can you answer my question about why didn't they ever talk to Cathay Pacific once ASAP says they're not going to give them satisfaction? Yes, I can, Your Honor, but if I may first clarify the basis for the claims. The claims against Cathay Pacific are based on Cathay Pacific's service of providing air travel. They received air travel. They got to the Philippines. Their flight was delayed, canceled while they were in the Philippines, coming back, and therefore Cathay was not able to and did cancel their flight. Under the plain language of the general contract of carriage, the Herreras were entitled to a refund from Cathay Pacific. And this is what we're looking at is the general contract of carriage. That's the basis for the claims. But I'm saying that normally if you want a refund from somebody, you ask them. I agree with you. The reason is, and which is stated in our complaint, is that Cathay Pacific emailed the Herreras directly and told them to request a refund through ASAP tickets. Okay. Now, there is nothing in the general contract of carriage from Cathay that makes any requirement about how anything must be done in terms of requests. So the issue of arbitrability, of whether a non-signatory can then impose arbitration as a non-party through a completely separate transaction, right, now we're getting well outside of the issue before the court right now. The issue of the appeal is whether a non-signatory can as a third-party beneficiary or under equitable principles. Now, Cathay doesn't even argue that it's a third-party beneficiary. That issue is not before the court. The issue that is before the court is whether California's equitable principles would require the district court and whether it was an abuse of discretion for the district court to decline to compel arbitration in this case. And if we are looking at the two contracts and the purposes for which they were entered, ASAP tickets for the purpose of purchasing the ticket, once you get your ticket, it is undisputed in this motion that Cathay's terms under the ticket definition in defining ticket, which is ER 136, says that the contract of carriage is integrated and incorporated into every ticket. So once the Herreras got the correct tickets, they had no claim against ASAP. The Herreras have never alleged that ASAP did anything wrong. This is a complete runaround and a distraction from what duties Cathay has to the Herreras. I asked about, from your side, is there any kind of contract between ASAP and Cathay Pacific? No, I'm not aware of any, Your Honor. So ASAP just, what, bought these tickets in bulk itself, and Cathay Pacific allows that? Sure, and that's sort of like Expedia or Hotwire or any number of different. Your email said something about Skyscanner, which I'd never heard of, but we did look up. So in one of your filings you say, well, or in one of their filings, excuse me, you say, well, these are cheap tickets. So is Cathay Pacific still happy to have, or your argument is that they should still have all the obligations, even though, in a sense, when your people bought their ticket, it was like a cut rate, second rate ticket? Sure. Your Honor, I believe that Cathay Pacific just admitted that the contract of carriage still applies and that Section 10 of the general conditions of carriage apply to providing refunds. That is not disputed. The question is only whether arbitration. Sorry, you said Section 10? Is that 11? Yeah, that would be Section 10 of the general contract of carriage, ER 155, and then the refund provision is located on the record at ER 156. Section 11 makes a differentiation between voluntary refunds and involuntary refunds. And if a flight is canceled under Section 1.2, if we cancel a flight, the amount of the refund shall be, and then it explains how much each passenger is entitled to. Cathay doesn't dispute that it's obligated to pay that to them. What they're saying is that now they're entitled to benefit through equitable principles from the third-party ASAP tickets agreement. Now, California courts have applied equitable estoppel, but this is one of the rare situations where the plaintiff appellees are saying, read the plain language of the contract and take it for what it's worth.  And Cathay is trying to not only add text to their own contract by suggesting that somehow the provision relating to currency means that all refunds must be issued through a travel agency. You can search the general contract of carriage in vain to search for any instructions on how payment must be made or anything about third-party travel agencies. The question is whether ASAP's terms and conditions allow for Cathay to enter into their arbitration agreement. And, Your Honor, as if I may, excuse me for stepping away from the microphone, I'd like to direct the court's attention to a case that was decided by the Northern District of Texas, which is called Ward v. American Airlines 498F Sup 3D909. And if you look at this was a case that actually isn't typically good for the consumer plaintiff here, but a third-party beneficiary of Expedia's terms of use were forced into arbitration because the arbitration clause in that case specifically said that our travel, let me make sure I get the language right, our travel suppliers or any companies offering products or services through us, which are beneficiaries of this arbitration agreement, must be resolved by binding arbitration. On the other hand, the ASAP tickets arbitration clause says the exclusive means, this is with ASAP, of resolving any dispute or claim arising out of or related to this agreement, including breach thereof, the service or the website shall be binding arbitration. So the arbitration clause here is far more limited than other third-party travel suppliers. So this is not the case in which we need to reinforce the supremacy and breadth of the Federal Arbitration Act. We all know that the Federal Arbitration Act is very broad, but the company has an obligation if it intends for its travel suppliers to be third-party beneficiaries of the contract to state such in the agreement. Cathay is seeking to add language into ASAP's terms and conditions so that it can avoid federal jurisdiction. And to Judge Wallace's question, the only reason we're bringing up the federal regulations, which do say that you cannot as a, in your conditions of carriage, as a travel supplier, you cannot force someone into an alternative venue such as into arbitration, I'm not saying that that bars their ability to somehow make a third party, be a third-party beneficiary of an arbitration agreement. What plaintiffs are suggesting is that under equitable principles, it would not be in fairness, which is all the defendant's asking for. They're not saying they're a third-party beneficiary. They're saying that under California's equitable principles, the district court abused its discretion in not ordering arbitration. And the fairness is following what the Federal law says. The Montreal Convention, under Article 33, has a statement that suggests that plaintiffs have a right to federal jurisdiction in the place of their residence. And so there is no equitable reason to require arbitration here. And if Cathay wanted to be a third party ---- In the equitable estoppel conditions and provisions, the key part seems to be intertwined. And that's what I was trying to ask about. Is there any contract between the two? And you say no, but maybe I don't understand the business. Enlighten me. If I buy a ticket, I can't just give it to my law clerk or sell it to my law clerk and have that person fly.  And then they legally can obligate you on those tickets. Is there some generality that allows that? Because you're sort of trying to say, well, there's no relationship with ASAP at all, but yet you're saying you sold them the tickets because they're not your agent, right? You're trying to avoid them being your agent. No. Plaintiffs do not deny that they bought the tickets through ASAP. And plaintiffs do not deny that they're bound by the arbitration agreement with ASAP. No, I mean, you're not. My question is, am I right? You claim ASAP's not your agent. Is that right? ASAP was the Herrera's travel agent. No. Are they your? Okay. I'm sorry. Okay. I'm switching sides. Do you say that ASAP is CP's agent? No. No, I don't say that they're agent. In other words, if I wanted to go to the Giants game, I can buy a ticket through StubHub. My only ‑‑ I'm going to be bound by arbitration. When you buy through StubHub, don't they have some connection with the Giants? Sure. All right, so doesn't that intertwine? I guess you're right. I was misspeaking there. But if the issue is intertwining, isn't there some intertwining here? Only to the extent at which the flight occurred, right? And once the Herrera's took off from San Francisco and made it to the Philippines, any claims against ASAP would have been limited to if they bought a ticket in first class, but they were actually put in coach and then they got sent to Hanoi instead. That would be a way or a claim against ASAP. I mean, to put a ‑‑ to follow up on the line of questioning that Judge Boggs is pursuing, the general conditions, carrier conditions or whatever they are, the contract between ‑‑ the CAFE's contract says that a refund is going to go to the person who bought the ticket. And here the person or the entity that bought the ticket was ASAP. So for the plaintiffs in pursuing a refund, does that language in CAFE's contract mean that the middleman is still always there? ASAP is still always there? I believe that the language says individual, right? I don't think that that envisions a travel agency. But irrespective of the method of payment, that's not sufficient intertwinement of the claims. You see, the focus of the equitable estoppel inquiry is into the nature of the claims asserted under Fuentes and whether the subject matter of the dispute is intertwined with the contract providing for arbitration. And these claims are not ‑‑ or this relationship or these contracts are not intertwined at all. It is very clear in ASAP's terms and conditions that we have no power over the airline's restrictions on their fares. Once you buy a ticket with us, that's the cheap ticket thing. Then it's final. You can't come back to us and make a claim about refunds or anything like that. All of the terms and all of the restrictions on the fares, including refunds, are through the airline. And that's ‑‑ Just to go back to Judge Forrest's point, 11.1.2 says we'll make a refund only to the person who paid for the ticket. And I guess I'll ask on rebuttal who they say paid for the ticket because the person who paid for the ticket to CP was ASAP. The Herrera. Well, the Herrera's paid for the ticket to ASAP. Sure. Not to CP. Sure. And there is a provision in the ASAP terms that would allow for ASAP to take a $250 fee out of the payment. But that still doesn't take away Cathay Pacific's obligation, and the right and the claims are not based on any breach of the ASAP agreement. I understand, but I'm reading from the GCC. So is it your position that the Herrera's are the persons who paid for the ticket under 11.1.2? Yes, and they're entitled to repayment in the same method and means as they made the payment. Even though they never paid CP? Correct. That is how I assume it works. I do not think that that is enough to apply an abuse. And this is maybe the most interesting legal issue here because I think the terms of these contracts are clear, and the rights and obligations under the contract, I think it's established, arise under the Cathay general contract of carriage. But I think the more interesting question here is that because this is an equitable principle, it's well established in the Ninth Circuit that an abuse of discretion standard is applied. The district court did not abuse its discretion in refusing or declining to allow ASAP's terms and conditions to bring the Herrera's into arbitration against a non-signatory third party. And, you know, with that, we ask that the district court be affirmed, and I'm happy to answer any questions that the court may have. Judge Wallace, any further questions? I'm fine, thank you. All right. Okay. Okay. So I just want to address a couple of points. First, the issue surrounding 14 CFR 253.10 was raised for the first time on the appeal. It was not raised in the lower court. On that, I'd submit that it should not be considered by the court. Point two, the issue now is not the issue of flights. The issue is now an issue of refunds. That's why the equitable principles come into play. Your Honor. Let's go back to this line of questioning that Judge Boggs started about. So what is your position in terms of who paid for this ticket? It was ASAP tickets paid for the ticket. And so I'm going to piece this together. I assume this is your argument then. If the communication was sent out that if you want a refund, contact ASAP, and the contract that CAFE has, the GCC, says that we'll do a refund, but the refund is only going to the person who paid for the ticket, then that e-mail would make sense because you want a refund, go talk to the person that we think paid for the ticket. They'll talk to us. If a refund is due, that money would go to the middle person, and then that middle person, whatever its contract was, goes with the actual customer who sat in the seat, will figure out between them what is owed. Is that how your client sees this? Yes, Your Honor. Now, if I may. And so, therefore, from that, you're saying when ASAP refused to pay, they should have sued ASAP, not you. That would be our position, Your Honor. Again, part of the issue here is that even if CAFE Pacific cannot, even if it tried, refund the money to the Herreras today. We don't have their financial information. So if the Herreras were to contact us directly. Can you say the financial information? Credit card from which it was paid. And it creates another issue. Whether it was the Herreras or just using the population at large, if they request a refund, you can have a situation where CAFE Pacific is not abiding by its own terms and conditions, and you have two people requesting a refund for the same travel. So in order to avoid that, you streamline the process, and you have it be directed to the entity that paid for the ticket. It's a practical and it's an easy solution to address those potential disparities. But I'll add, just to quickly touch on the equitable points, again, the issue is one of refunds, not one of whether or not they are able to fly on the flight or not. The reason why these claims are so intertwined is because, again, planes were purchased tickets. ASAP was a travel agent. CAFE Pacific was a carrier that provided the tickets. After the flight was canceled, they contacted ASAP and were told that they can only get a voucher. The crux of planes is coming. Presumably also the amount that CAFE Pacific would refund is tied to what they paid ASAP, which might well have been less than what the class of service would be had they purchased it from you. That's correct. That's the only way to know. I mean, I'm dubious that you don't know where they are, but the amount that you pay them if you refund would be the ASAP amount. Correct. The amounts of the refund that would be paid to ASAP would be the amount that presumably they charge the Herreras or close to it. Again, the crux of the complaints or the crux of the breach of the contract claim is that CAFE Pacific represented that in lieu of a refund they can only get a voucher. It's simply untrue. It's a refund issue. ASAP never contacted CAFE Pacific to get a refund. The statement that plaintiffs could only obtain a voucher in lieu of a refund is being attributed to CAFE Pacific, and that's a singular basis for their cause of action. One other question that I want to ask about this. Hold on. If sort of that train of events that I tried to describe and you confirmed is true and refunds really have to go through the middleman and not directly between CAFE and the person in the seat, then why does that go to arbitrability? Why isn't that just a merits argument? And so then maybe you proceed in arbitration and then CAFE is able to just ---- I'm sorry. This is not even fully formulated in my mind. But I guess I'm getting at ---- Yeah, why does that mean that this claim should be arbitrated instead of just dealing with those issues on the merits of the claim and saying that the claim fails because you asked the wrong person? I don't think those two options are mutually exclusive. I think that it's both. I think that it speaks to the merits, but it also speaks to the interconnectedness of the claims. Because, again, regardless of how plaintiffs may characterize it in their pleadings or in arguments, I think it was the Franklin case, which was decided by this Court in 2021, that's explicitly stated. It doesn't matter how they characterize the argument. It needs to look to the nature of the inquiry, the nature of the redress that's being sought. And that determines interconnectedness of the claims. Here the reliance is on ASAP tickets representation, that Cathay Pacific is not going to honor refunds. That's the nature of the breach. Outside of that, there is no other wrongful conduct attributed to Cathay Pacific. It's not that Cathay Pacific wrongfully deprived plaintiffs of flights. The issue is exclusively relating to refunds and Cathay Pacific's ability to provide that refund. Now we have a direct conflict with ASAP tickets now claiming that Cathay Pacific made a material representation to them saying that they will not provide refunds to plaintiffs. Cathay Pacific never received any such request from ASAP tickets. Those two things cannot be true, right? So just on that alone, it's inherently unfair or, you know, invoking fairness principles. It's inherently unfair to attempt to hold Cathay Pacific liable for representations that it did not make that are being attributed to it and at the same time not maintain that it can avail itself of the provisions of that agreement between plaintiff and ASAP tickets. I have one more question. We'll see if others have questions. Do we have to, for you to prevail in this situation, do we have to conclude that there is no independent obligation that Cathay owes to the customer, the in-line customer with regard to refund, that the only obligations with regard to refund flow through this middleman? There's nothing direct between your company and the end user? No, Your Honor. I think that the conditions of carriage would be the governing document. And Cathay Pacific has, I'm just going to, if you don't mind if I just pull my conditions of carriage. I thought you had said that now your position is that because of 11.1.2, at least on the refund point, the obligation is only to pay ASAP because they're the people who paid for the ticket. Again, that is a merits argument, so you may well win even if not forced arbitration. It doesn't go to arbitration, but I thought that was your position now. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Now, I don't want to take the position that there's not a world where Cathay Pacific would potentially honor a refund request of that nature, but pursuant to the terms and conditions, there is not, it wouldn't be obligated to do so under the facts of this case, essentially. All right. Judge Boggs or Judge Wallace, any further questions? I'm fine. I'm fine. Thank you. Thank you, counsel. I appreciate counsel's arguments in this challenging and interesting case. The matter of Herrera v. Cathay Pacific is under submission. We're going to take our brief recess for 10 minutes.
judges: WALLACE, Boggs, FORREST